IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMERICAN FEDERATION OF STATE,
COUNTY & MUNICIPAL EMPLOYEES,
COUNCIL 18, AFL-CIO, LOCALS 624,
1888 AND 2962

     Petitioners,

v.                                                       Case No. CIV 14-860 MV/SCY

CITY OF ALBUQUERQUE

     Respondent.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Petitioners' Motion to Remand. *Doc. 8*. Having reviewed the Motion and accompanying briefing, and being fully advised, the Court finds that the Motion should be **GRANTED**.

**I.**     **BACKGROUND**

This action is the latest chapter in a four year dispute between the Petitioners and Respondent City of Albuquerque over certain organized labor agreements. Petitioners include AFL-CIO, CLC, Locals 624, 1888, and 2962 and are collectively referred to historically, throughout the pleadings, and in this order as AFSCME.

Each of these Locals had a collective bargaining agreement (CBA) with Respondent that is now expired, with Locals 624 (blue collar) and 2962 lapsing in 2010, 624 (transit) in 2011 and 1888 in 2013. *Doc. 1*, Ex. A at 2, Ex. B at 2-3, *doc. 13* ¶¶ 6, 24, 41, 52. Pursuant to the expiration of these CBAs each Local has been engaged in negotiations with Respondent over successor agreements under the Labor Management Relations Ordinance N.M. Code of Ordinances, ch. 3, art. 2, §§ 3–2–1 to –18 (2003, as amended through 2005)(LMRO). *See*

*generally doc. 5 Ex. A, doc. 13*. In each case, negotiations over these agreements have ultimately resulted in impasses, with AFSCME contending in each case that Respondent has engaged in bad faith, regressive bargaining with regard to the terms of successor agreements. *Id.*

In mid-2014, the parties again attempted mediation, with each side presenting new LBOs on July 31, 2014, and meeting on August 14, 2014, this time with a federal mediator. *Doc. 5* at 5. This attempt was also unsuccessful. *Doc. 5*, Ex. A. The mediation period expired on August 31, 2014. *Id.* After the expiration of the mediation period, on September 12, 2014, Respondent sent letters to each of the Locals informing them it was imposing the terms of its most recent LBOs on each organization. *Doc. 1*, Ex. A at 3.[1]

As a result of these letters, AFSCME simultaneously filed a complaint for declaratory judgment and permanent injunction, along with a petition for a temporary restraining order, against Respondent in the Second Judicial District of New Mexico on September 18, 2014. *Doc. 1* at 1, Ex. A. Respondent removed the action on the basis of federal question jurisdiction on September 19, 2014. *Doc. 1*. Petitioners moved this Court to remand on September 22, 2014, arguing that there is no question of federal law at issue. *Doc. 8*.

**II.    STANDARD OF REVIEW**

An action may be removed from state to federal court under 28 U.S.C. Section 1441(b) when the federal court has "original jurisdiction" over the action. Original jurisdiction arises where an action is "founded on a claim or right arising" under federal law. 28 U.S.C. § 1331; *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987) (footnote omitted). "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of

---

[1] Petitioners voluntarily acknowledge that some of the economic terms imposed by Respondent are not, in fact disputed. However, which terms are and are not disputed is not relevant to the instant action.

the plaintiff's properly pleaded complaint." *Id.* "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* When federal subject-matter jurisdiction is challenged, "[m]ere conclusory allegations of jurisdiction are not enough." *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

However, "even though a plaintiff asserts only claims under state law, federal-question jurisdiction may be appropriate if the state-law claims implicate significant federal issues." *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006). The federal court must look to whether the complaint presents a significant question of federal law, and the exercise of federal jurisdiction "is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S.Ct. 2363, 2367 (2005). "In other words, to establish federal-question jurisdiction under the *Grable & Sons* test, a state-law claim (1) must necessarily raise a federal claim that is both (2) actually disputed and (3) substantial; and (4) that may be resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1208 (10th Cir. 2012).

**III.    ANALYSIS**

In the Complaint, Petitioners contend that Respondent has violated the LMRO, a city ordinance, by failing to negotiate in good faith and unilaterally imposing contractual terms on them via the September 12, 2014 letters. *Doc. 1*, Ex. A at 1-2. In interpreting the meaning of good faith bargaining and the effect of this unilateral imposition of terms, Petitioners rely on federal case law interpreting the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (NLRA),

arguing they may do so because LMRO is patterned on the federal Act. *Doc. 1*, Ex. A at 7-8. Respondent contends that removal to federal court is appropriate because Petitioners' reliance on federal law interpretations of Respondent's duties under the LMRO raises a "substantial and disputed federal question." *Doc. 1* at 2. Petitioners respond that while reference to federal law is appropriate to clarify Respondent's duties under the LMRO, this application of federal law does not convert the issues presented in the Complaint from state to federal ones. *Doc. 8* at 1-2. The Court agrees, and will grant Petitioners' Motion.

     A.    **Petitioner's Complaint**

In their Complaint, Petitioners argue that Respondents have violated the LMRO first by failing to negotiate with them in good faith, a prohibited practice under Section 3-2-9(A)(4),[2] and then unilaterally imposing terms and conditions of employment for which they are required to bargain with Petitioners, in violation of Section 3-2-7, while negotiations are at an impasse. *Doc. 1*, Ex. A at 2-3. Because the LMRO creates obligations for collective bargaining that parallel those set forth in the NLRA, Petitioners argue that mechanisms for relief provided for in federal law during collective bargaining negotiations are equally applicable here. *Id.* at 7-11. These mechanisms include the application of the so-called "status quo" doctrine, which provides that after the expiration of a CBA, an employer may not unilaterally impose new conditions of employment during the pendency of negotiations for a successor agreement. *Id.* at 8.

Petitioners acknowledge that under federal law, a private employer may unilaterally impose new contractual employment terms where the parties have reached a good faith impasse in negotiations. *Id.* at 10. However, they contend that departing federal law by barring Respondents from such action is appropriate here because the LMRO removes certain bargaining

---

[2] The complete set of Albuquerque City Ordinances can be found at:
http://www.amlegal.com/nxt/gateway.dll/New%20Mexico/albuqwin/cityofalbuquerquenewmexicocodeofordinanc?f=templates$fn=default.htm$3.0$vid=amlegal:albuquerque_nm_mc

tools from public employees, such as the right to strike. *Id*. at 9.  They also point out that the New Mexico Court of Appeals, in *AFSCME v. City of Albuquerque*, specifically held that "[t]he LMRO does not permit the City to unilaterally impose conditions of employment once a CBA has expired. Instead, the LMRO includes provisions for impasse resolution through mediation and voluntary binding arbitration."  304 P.3d 443, 446 (N.M. Ct. App. 2013).

In the alternative, Petitioners argue that the impasse reached here is not an impasse reached in good faith, but instead arose from Respondent's bad faith, regressive negotiating tactics.  They contend that Respondent should not be rewarded for these tactics by being allowed unilaterally to impose contractual terms, particularly since the terms Respondent seeks to apply are, in Petitioners' opinion, considerably "different, and more harsh, than those presented in its last best and final offer."  *Doc. 1* at 11.  They further note that under federal law, where an impasse is produced through bad-faith bargaining, a private employer is not permitted to unilaterally impose new contractual terms.  *Id.*

   **B.**   **The Motion to Remand**

In their Motion, Petitioners argue that removal of this action is improper because what they have raised in their Complaint is a "purely state law question. . .informed by federal precedent."  *Doc. 8* at 2.  They note that the issue presented is whether Respondent's conduct is lawful under a state statute, namely the LMRO.  Petitioners further assert that it is only because of the lack of existing New Mexico law, and the fact that the LMRO is based on a federal statute, that Petitioners seek to rely on federal law.  *Id.* at 4.  Specifically, Petitioners point out that they explicitly ask the state court to depart from federal law in interpreting Respondent's duties during a bargaining impasse, which further indicates that what is at issue is an adjudication of state law. *Id.* at 5.  Petitioners go to some lengths to note that reference to federal law is a well-

established practice of New Mexico courts where a state statute is based on a federal one, and that such reference does not transform the issue into one of federal law. *Id.* at 7-9.

Respondent counters that Petitioner seeks the application and expansion of the federal "status quo" doctrine, and that the Complaint thus necessarily implicates a substantial and ambiguous issue of federal law. According to Respondents, this Court is better suited to address this issue of federal law than is the state court. *Doc. 16* at 4-6. Respondent further argues that by seeking both the application, and modification, of the status quo doctrine as described in the Complaint with relation to impasses, Petitioners will create an unsettled issue of federal law that must be adjudicated in a federal forum. *Id.* at 8. Further, because Petitioners do not set forth any "completely unrelated" state law claim for which relief can be provided with reference only to state law, this Court should assume jurisdiction. *Doc. 16* at 9, citing *Christiansen v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988).

Respondent's arguments are unavailing. The Supreme Court of New Mexico has explained both that New Mexico courts may rely on the federal interpretation of federal statutes on which New Mexico statutes are patterned, and that:

> "Our reliance on the methodology developed in the federal courts. . .should not be interpreted as an indication that we have adopted federal law as our own. Our analysis of this claim is based on New Mexico statute and our interpretation of our legislature's intent, and, by this opinion, we are not binding New Mexico law to interpretations made by the federal courts of the federal statute."

*Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M. 1990). Respondent does not dispute Petitioners' contention that the provisions of the LMRO are substantially similar to the Public Employee Bargaining Act (PEBA) in requiring employers to bargain as to terms and conditions of employment and prohibiting employers from refusing to bargain collectively in good faith. N.M.S.A. 1978, §§ 10-7E-17, 10-7E-19. Nor does Respondent dispute that the New Mexico

Court of Appeals has held both that interpretation of the PEBA should generally track that of the NLRA because of the linguistic similarity between those two statutes and the fact that the NLRA predates the PEBA. *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 938 P.2d 1384, 1388 (N.M. Ct. App. 1997)("our legislature's selection of language that so closely tracks the NLRA indicates general approval of the operation of that statute. . .we should interpret language of the PEBA in the manner that the same language of the NLRA has been interpreted. . . ."). The Court agrees with Petitioners that the LMRO, because of its similarity to the PEBA and the NLRA, as well as the fact that it was preceded by the NLRA, should be accorded the same interpretive treatment.

As the Court of Appeals explained in *Las Cruces Professional Fire Fighters*, "such an interpretative approach furthers the legislature's evident intent **to incorporate certain federal standards into the PEBA**." *Id.* (emphasis added). In other words, New Mexico state courts are not only permitted, but encouraged, to look to the NLRA to help develop New Mexico's own labor law. *See Regents of Univ. of New Mexico v. New Mexico Fed'n of Teachers*, 962 P.2d 1236, 1243 (N.M. 1998)(agreeing with the Court of Appeals opinion in *Las Cruces Professional Fire Fighters* that reference to law arising from the interpretation of the NLRA was appropriate for developing New Mexico law on the PEBA). That Petitioners seek to do so here by interpreting good faith bargaining under the LMRO to implicate a state version of the federal status quo doctrine is entirely appropriate, and does not transform their action from a state law issue to a federal one. Nor does their proposed alteration of the status quo doctrine in the public employment context create an unsettled issue of *federal* law. Again looking to *Las Cruces Professional Fire Fighters*, the court there explicitly acknowledged that departures from federal law could arise as the body of state law on PEBA developed. *Id.* ("the special circumstances of

public employment may on occasion require an interpretation of the PEBA different from the interpretation of essentially the same language in the NLRA.").

Applying the test set forth in *Devon Energy*, this Court thus cannot find that there is, as Respondent contends, an embedded federal claim in Petitioners' claim for declaratory relief. *See doc. 16* at 7. Petitioners do not implicitly premise their cause of action on a federal statute, but rather seek the interpretation of an undecided point of state law by referencing federal law: namely, they seek to determine at what point the LMRO would allow the imposition of unilateral terms after a good-faith impasse is reached, and what constitutes a bad-faith impasse under the LMRO such that unilateral terms could likely not be imposed. These are clearly questions for the state court, even if in reaching the answers to those questions, the state court relies on federal law. Because Respondent's claim fails at the first step of the *Devon Energy* test, remand is appropriate.

### C. Sanctions

Petitioners contend that they are also entitled to fees under 28 U.S.C. Section 1447(c) because Respondent's removal argument relied on "a tortured reading of the Complaint and Verified Petition to argue that it asserted a claim that arose under federal laws" while ignoring Petitioners' explicitly stated state law claims. *Doc. 8* at 11. Petitioners further assert that Respondent actually removed this matter to avoid a temporary injunction in state court. *Id.*

28 U.S.C. Section 1447(c) states that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v.*

*Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  As the Supreme Court there explained, "assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Id.* at 140.  Further, a plaintiff need not show bad faith on the part of the defendant to win attorney's fees. *See Topeka Hous. Auth. v. Johnson*, 404 F.3d 1245, 1248 (10th Cir. 2005).

Here, the Court finds that Respondent's removal was objectively unreasonable.  Petitioners' Complaint states on its face that it raises issues of state law using federal law only for interpretive guidance.  *Doc. 1*, Ex. A at 7.  Respondent's contention that Petitioners attempt to "apply [a] wholly federal concept. . .to a municipal ordinance" utterly ignores the entire body of New Mexico law discussed above that allows Petitioners to take the legal approach they have espoused.  This ignorance is particularly suspicious in light of the litigious history between these two parties and the timing of the removal notice in relation to the stage of the state court litigation of Petitioner's request for a temporary restraining order.   The Court therefore will order Respondent to pay Petitioners for attorneys' fees incurred related to the instant motion to remand.

**IV.   CONCLUSION**

For the forgoing reasons, the Court finds that it lacks subject-matter jurisdiction over the instant action.  Accordingly, the Court will remand the matter to the Second Judicial District Court, Bernalillo County, New Mexico by the Order of Remand filed contemporaneously with this opinion.

It is further ordered that that, within seven days of the entry of this Order, Petitioners shall file an affidavit outlining their expenses as described above.  Respondent's objections to the

amount claimed by Petitioners, if any, shall be filed within seven days of the filing of the affidavits.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE